UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────

SHAWN M. DELAYO,

                          Petitioner,

                                             9:09-CV-1090
v.                                           (GTS)

ROBERT M. CARNEY,

                          Respondent.

────────────────────────────────

APPEARANCES:                            OF COUNSEL:

SHAWN M. DELAYO, No. 06-A-6320
  Petitioner, *Pro Se*
Coxsackie Correctional Facility
Box 999
Coxsackie, NY 12051

HON. ANDREW M. CUOMO                     PAUL M. TARR, ESQ.
Attorney General for the State of New York   Assistant Attorney General
  Counsel for Respondent
120 Broadway
New York, NY 10271

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        In his Petition for a writ of *habeas corpus* filed on September 28, 2009 (Dkt. No. 1

[hereinafter "Petition"]), Shawn M. Delayo ("Petitioner") challenges his conviction of September

16, 2005, in Schenectady County Court on two counts of third degree criminal sale of a

controlled substance.  (Dkt. No. 17, Attach. 15 [Transcript of Change of Plea of Shawn M.

Delayo, dated 9/16/05] [hereinafter "Plea Tr."].)  Petitioner was thereafter sentenced to an

aggregate, indeterminate term of seventeen to twenty-five years imprisonment.  (Dkt. No. 17,

Attach. 15 [Transcript of Sentencing of Shawn M. Delayo, dated 11/17/06] [hereinafter

"Sentencing Tr."].)  Petitioner's conviction and sentence were unanimously affirmed.  *See People v. Delayo*, 52 A.D.3d 1114 (N.Y. App. Div., 3d Dept. 2008).  On September 26, 2008, the New York Court of Appeals denied Petitioner leave to appeal.  *People v. Delayo*, 11 N.Y.3d 787 (N.Y. 2008).

In his Petition, Petitioner raises the following grounds for relief:  (1) he was entitled to an evidentiary hearing on whether he had breached the terms of a Cooperation Agreement into which he had entered with the prosecution on September 15, 2005 (Petition, Ground One);[1] (2) the prosecutor was required to establish that Petitioner had violated the terms of the Cooperation Agreement "by a fair preponderance" of evidence, a burden that he failed to meet (Petition, Grounds Two, Three); and (3) Petitioner is entitled to specific performance of the Cooperation Agreement (Petition, Ground Four).  For the reasons that follow, the Petition is denied and dismissed.

## I.     RELEVANT BACKGROUND

### A.     State Court Proceedings

The records supplied to this Court establish that on March 21, 2005, a Schenectady County grand jury returned a nine count indictment against Petitioner.  In that accusatory instrument, he was charged with four counts of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law ("Penal Law") § 220.39, and five counts of criminal possession of a controlled substance in the third degree, contrary to Penal Law § 220.16.  (Dkt. No. 17, Attach. 3 [Indictment No. 105-28] [hereinafter "Indictment"].)

---

[1]     A copy of the Cooperation Agreement was provided to the Court by the Respondent.  (Dkt. No. 17, Attach. 4 [hereinafter "Cooperation Agreement"].)

As the criminal matter involving those drug charges progressed, on September 12, 2005,

Petitioner provided an affidavit to the Rotterdam Police Department in which he provided law

enforcement agents with details surrounding the death of a female in December, 2003, as well as

events that occurred subsequent to that homicide.  (Dkt. No. 17, Attach. 2 [Affidavit of Shawn

M. Delayo dated 9/12/05] [hereinafter "Delayo Affidavit"].)  In that document, Petitioner stated

that one morning in December, 2003, he was in his bedroom, smoking crack and watching

television, when he heard "a loud pop."  (*Id.* at 4.)  When he opened his bedroom door, he saw

his friend, Dwayne Wilson, holding a gun and standing over a woman, who was subsequently

identified as Crystal Glasper, lying on the floor with a bullet hole in her forehead.  (*Id.* at 4-5.)

Petitioner stated that he and Wilson remained in the apartment with Glasper, who eventually

died from the gunshot wound, until they detected an odor.  (*Id.* at 6-7.)  Wilson claimed that the

victim's body was then washed, wrapped in a blanket, and bundled in construction bags secured

by duct tape.  (*Id.* at 8-9.)  At some point between the end of December, 2003 and the beginning

of January, 2004, the two men decided to move the victim's body to the home of Wilson's

girlfriend on Cedarlawn Avenue in Rotterdam.  (*Id.* at 9-10.)  Petitioner and Wilson drove the

body to that residence, hid it under the home's porch, and obscured it from view with wood and

garbage.  (*Id.* at 10.)  Petitioner informed law enforcement authorities that he helped Wilson

conceal the murder and dispose of the body, and kept silent about the crime, because he was

afraid of Wilson and also believed that he might harm Petitioner's mother.  (*Id.*)

Three days after Petitioner signed the above affidavit, he, his counsel and an Assistant

District Attorney with Schenectady County executed the Cooperation Agreement.  According to

the terms of that agreement, Petitioner would plead guilty to two counts of the third degree

criminal sale of a controlled substance in full satisfaction of all charges brought against him in the Indictment.  (Cooperation Agreement at 1.)  He was also required to assist the authorities in their investigation into the murder of Glasper by providing "truthful statements" to the police and the District Attorney's office concerning that homicide, in addition to "truthful testimony" at any hearings, Grand Jury proceedings or trials relating to that murder.  (*Id.* at 1-2.)  Petitioner acknowledged that the truthfulness of the information he provided to law enforcement agents was "a condition of this plea and sentence offer," and further promised in his Cooperation Agreement that he would not make false statements to anyone regarding Glasper's murder, engage in conduct "calculated to undermine his credibility as a witness," or commit any new crimes.  (*Id.* at 2.)[2]  If Petitioner complied with all of his obligations under that agreement, he would be permitted to withdraw his guilty plea to two counts of third degree criminal sale of a controlled substance, and instead plead guilty to a single count of attempted third degree criminal sale of a controlled substance, and receive an indeterminate sentence of two to six years imprisonment.  (Cooperation Agreement at 2.)  That agreement further provided, however, that if Petitioner failed to abide by the terms of such agreement, he would still nevertheless be bound by his original guilty plea and thereafter be sentenced by the County Court to an indeterminate term of eight and one-third to twenty-five years imprisonment for his conviction on Count One of the Indictment, and a consecutive, determinate term of nine years imprisonment on his conviction on Count Three of the Indictment, resulting in an aggregate, indeterminate sentence of seventeen to twenty-five years imprisonment.  (*Id.* at 2-3.)

---

[2]      Pursuant to that agreement, the truthfulness of Petitioner's "statements and testimony . . . [was] to be determined solely by the District Attorney."  (Cooperation Agreement at 2.)

On September 16, 2005, Petitioner appeared before Schenectady County Court Judge Karen A. Drago and pleaded guilty to two counts of third degree criminal sale of a controlled substance.  At that proceeding, Petitioner informed the County Court that he had discussed the agreement with his counsel, and that Petitioner understood and accepted the terms and consequences of the agreement.  (Plea Tr. at 4.)  After being advised of the various rights he would forfeit by pleading guilty to the charges, the trial court questioned Petitioner about his proposed guilty plea and ultimately accepted his guilty plea to the third degree criminal sale of a controlled substance charges.  (*Id.* at 4-14.)

As the investigation into the homicide continued, law enforcement agents found a number of discrepancies between Petitioner's version of what transpired around the time Glasper was killed and other evidence discovered during the investigation, which evidence included affidavits provided by a married couple who lived in a first floor apartment in the same building where Petitioner and Wilson lived at the time of the murder.[3]  (Dkt. No. 17, Attach. 1 at ¶¶ 27-44 [Affidavit of Philip W. Mueller dated 11/17/06] [hereinafter "Muller Aff."]; *see also* Dkt. No. 17, Attach. 6-7 [Husband Affidavit and Wife Affidavit] [hereinafter collectively, "Husband and Wife Affidavits"].)  In an attempt to resolve the differences that existed between the description of what transpired around the time of the homicide as contained in the Husband and Wife Affidavits *vis-à-vis* the information provided to the authorities by Petitioner, an Assistant District Attorney and a police investigator re-interviewed the Wife, and Petitioner was re-interviewed twice.  (Muller Aff. at ¶¶ 45-47.)  Those differences could not be resolved, however, and

---

[3]      The state court referred to those two individuals as "Husband" and "Wife," a terminology adopted by this Court in this Memorandum Decision and Order.

Petitioner ultimately claimed that the substantial discrepancies which existed between those two different accounts of what transpired was attributable to the fact that the Husband and Wife had provided false information to law enforcement agents.  (*Id.* at  ¶¶ 50-52.)

After considering the fact that neither the Husband nor Wife had any criminal charges pending against them, whereas the Petitioner, by his own admission, routinely committed serious crimes, and had only cooperated with the authorities in exchange for leniency with respect to the narcotics charges that were pending against him, the District Attorney's Office ultimately concluded that Petitioner had lied in the statements he provided to the police and had therefore breached the terms of the Cooperation Agreement.  (*Id.* at ¶¶ 56-58.)  The prosecutor informed Petitioner and his counsel of this fact, as well as the District Attorney's belief that Petitioner's credibility had been undermined, and his value as a witness had been compromised, by Petitioner's misrepresentations.  (*Id.* at ¶ 58.)

Prior to Petitioner's sentencing, the prosecution filed an affirmation with the Trial Court in which the District Attorney discussed in detail the discrepancies which existed between Petitioner's statement to law enforcement agents and the statements provided to the authorities by the Husband and Wife.  (Muller Aff.)  On November 17, 2006, Petitioner appeared before Judge Drago for sentencing.  At that proceeding, the prosecutor reiterated the basis for his determination that Petitioner had breached his obligations under the Cooperation Agreement. (Sentencing Tr. at 18-25.)[4]  Petitioner did not dispute the District Attorney's conclusion that

---

[4]      The sentencing of Petitioner consisted of two separate proceedings; one of which was sealed and the other which was public.  (Sentencing Tr.)  For ease of reference, this Court refers to the page numbers generated by the Clerk of the Court when those transcripts were docketed in this action when referring to the page numbers of the sentencing transcript.

Petitioner had breached his obligations under the Cooperation Agreement, nor did Petitioner offer any evidence to the contrary, request a hearing on the matter, or move to withdraw his guilty plea.  Instead, Petitioner's counsel declared that he had "nothing to add at this time" just prior to Petitioner's sentencing  (*Id*. at 27.)  Judge Drago then determined that Petitioner had breached the terms of the Cooperation Agreement in the manner described by the prosecution. (*Id*. at 30.)  The County Court then sentenced him to an aggregate, indeterminate term of fourteen to twenty-four years imprisonment–a term that was less than the maximum sentence that could have been imposed on Petitioner under the terms of the Cooperation Agreement.  (*Id*. at 44-45; Cooperation Agreement at 2-3.)  After imposing sentence, the County Court afforded the Petitioner an opportunity to make a statement, but he declined to do so.  (Sentencing Tr. at 46-47.)

As noted above, Petitioner's appeal of his convictions and sentences was unanimously denied by the Appellate Division.

**B.      Proceedings in this Court**

Petitioner commenced the present action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this District on September 28, 2009.  (Petition.)

On June 22, 2010, the Office of the Attorney General of the State of New York, acting on Respondent's behalf, filed an answer in opposition to Petitioner's Petition, together with various state court records relating to his conviction.  (Dkt. Nos. 16, 17.)   In opposing the Petition, Respondent argues that all but one of Petitioner's claims are unexhausted, and that the only claim which Petitioner exhausted in the state courts must be denied because such claim was denied on procedural grounds.  (Dkt. No. 17, Attach. 1 [Respondent's Memorandum of Law in Opposition

to Petition] [hereinafter "Resp. Mem."].)  On August 23, 2010, Petitioner filed a Traverse in

further support of his habeas application.  (Dkt. No. 20 [hereinafter "Traverse"].)

      This matter is currently before this Court for disposition.

## II.    DISCUSSION

### A.    Procedural Default

#### 1.    Claim Barred By Independent and Adequate State Ground Doctrine

      In his initial ground for relief, Petitioner argues that his sentence must be vacated because

the County Court failed to conduct an evidentiary hearing on the issue of whether Petitioner

breached the terms of the Cooperation Agreement.  (Petition, Ground One.)  Respondent claims

that Petitioner is barred from obtaining federal habeas relief as to this claim under the

independent and adequate state ground doctrine.  (Resp. Mem. at 23-29.)

      It is "well established that federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law ground that

'is independent of the federal question and adequate to support the judgment.' "  *Cone v. Bell*,

129 S.Ct. 1769, 1780 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 [1991]) (other

citation omitted).  Thus, this Court must determine whether the Appellate Division denied

Petitioner's claim regarding the County Court's failure to hold a hearing on the issue of whether

he violated the terms of the Cooperation Agreement on an independent and adequate state

procedural ground.

      In addressing Petitioner's claim that the County Court wrongfully failed to hold such a

hearing, the Appellate Division determined that, because Petitioner "neither requested such a

hearing nor moved to withdraw his plea, this issue is unpreserved for our review."  *Delayo*, 52

A.D.3d at 1115.  A finding by an appellate court that an issue is unpreserved for review is an independent and adequate state procedural denial of such a claim that is both firmly established and regularly followed by the New York courts.  *Parker v. Conway*, 07-CV-0373, 2010 WL 1854079, at *5 (N.D.N.Y. May 7, 2010) (Singleton, J., sitting by designation) (footnote and citation omitted); *Venable v. Walsh*, 05-CV-0084, 2009 WL 750230, at *7 (E.D.N.Y. Mar. 19, 2009) ("New York's preservation rule constituted an adequate ground of decision independent of petitioner's federal claim").

Thus, Petitioner has procedurally defaulted on his initial claim that the trial court wrongfully failed to conduct a hearing before finding that he had failed to comply with the terms of the Cooperation Agreement.[5]  *See, e.g.*, *Parker v. Phillips*, 05-CV-1323, 2008 WL 4415255, at *2 (E.D.N.Y. Sept. 24, 2008) (noting that claims that are unpreserved for appellate review are procedurally defaulted), *appeal dismissed*, *Parker v. Phillips*, No. 08-5382-pr (2d Cir. Mar. 31, 2009).

## 2.      Unexhausted Claims

Respondent also asserts that Petitioner has failed to fully exhaust the remaining claims he raises in his petition.  (Resp. Mem. at 17-21.)

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of

---

[5]      The fact that the Third Department alternatively addressed the merits of this claim (*see Delayo*, 52 A.D.3d at 1115) is of no moment.  As the Second Circuit noted in *Green v. Travis*, 414 F.3d 288 (2d Cir. 2005), "even when a state court says that a claim is not preserved for appellate review but then rules 'in any event' on the merits, such a claim is procedurally defaulted."  *Id.* at 294; *see also Hayward v. Brown*, 09-CV-6495, 2010 WL 2629037, at *11 (S.D.N.Y. July 1, 2010) (quoting *Green*).

9

the State . . . .' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 [2d Cir. 2001]); *see also Hill v. Mance*, 598 F. Supp.2d 371, 375 (W.D.N.Y. 2009).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 [1999]) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *O'Sullivan*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[6]  Thus, this Court must determine whether Petitioner has fully exhausted his remaining grounds for relief.

A petitioner exhausts his state remedies in the federal habeas context by doing the following: "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 [1971]).  Significantly, a petitioner must have asserted all claims for which federal habeas review is sought in his application seeking leave to appeal from New York's Court of Appeals.  *See Galdamez*, 394 F.3d at 74-75 (citations omitted); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (describing process for seeking leave to appeal to New York's Court of Appeals); *Jamison*

---

[6]     This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

*v. Girdich*, 03-CV-4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005); *Geraci v. Sheriff, Schoharie County Jail*, 99-CV-0405, 2004 WL 437466, at *3 (N.D.N.Y. Feb. 20, 2004) (Sharpe, J.) (citations omitted).

 In his application seeking leave to appeal from the Court of Appeals, Petitioner requested that the court consider the issue of whether he was entitled to a hearing on whether he performed his obligations under the terms of the Cooperation Agreement.  (Dkt. No. 17-12, at 1-2 [hereinafter "Leave Application"].)  However, that application did not contain any request that such court review Petitioner's appellate claims that the prosecutor did not meet his burden of proving that Petitioner violated the terms of the Cooperation Agreement by a fair preponderance of the evidence, or that the County Court wrongfully denied Petitioner's claim that he was entitled to specific performance of the Cooperation Agreement.  (Leave Application.)[7]

 When a claim has not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."  *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 [2d Cir. 1997]); *see*

---

[7] Although Petitioner's counsel, in compliance with the rules of practice of New York's Court of Appeals, attached copies of his appellate brief to the Leave Application, that fact did not exhaust all of the claims asserted in that appellate brief; as courts in this Circuit have observed, "[m]erely attaching [appellate] briefs [to an application for leave to appeal] is not sufficient to have exhausted . . . claim[s] in the New York Court of Appeals."  *Hayward*, 2010 WL 2629037, at *27 (citing *Grey v. Hoke*, 933 F.2d 117, 120 [2d Cir. 1991]).  Thus, claims asserted by counsel in his appellate brief but not referenced in the Leave Application were not exhausted for purposes of Petitioner's habeas petition.  *See, e.g., Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000) ("[a]rguing a single claim at length [in a leave application] and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims.") (citing *Grey*, 933 F.2d at 120).

*also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[8]  Therefore, this Court must determine

whether it would be futile for Petitioner to present any of the above-mentioned claims to New

York's Court of Appeals through a second leave application to that court.

A criminal defendant may file only one application for leave to appeal with the New

York Court of Appeals.  *See Jones v. Woods*, 07-CV-1326, 2009 WL 4906882, at *2 (E.D.N.Y.

Dec. 18, 2009) (citing N.Y. Court Rules § 500.10[a]); *see also People v. Spence*, 82 N.Y.2d 671

(1993).  Since Petitioner may not now properly raise the above claims through another leave

application to that court, such claims are "deemed exhausted" for purposes of his habeas

application.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v.*

*Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Johnson v.*

*Fitzpatrick*, 08-CV-1194, 2010 WL 421127, at *7 (N.D.N.Y. Feb. 1, 2010) (Sharpe, J.) (citations

omitted); *Jones*, 2009 WL 4906882, at *2.  Although these claims are "deemed exhausted," they

are also procedurally defaulted.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501

U.S. 722, 735 n.1 [1991]); *see also Jones*, 2009 WL 4906882, at *2; *Ciochenda v. Artus*, 06-CV-

5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (noting that unexhausted claims which

petitioner can no longer pursue in state court are procedurally forfeited).

Thus, as with his claim relating to the failure of the sentencing court to hold a hearing on

whether Petitioner complied with the terms of the Cooperation Agreement, he has also

procedurally defaulted on the claims he asserts in his second, third, and fourth grounds for relief.

---

[8]      Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal
district court has the authority to deny (but not grant) an unexhausted claim on the merits, and
consider the exhausted claims on the merits.  *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*,
992 F.Supp. 685, 687 (S.D.N.Y. 1998).

### 3.      Consequences of Procedural Default

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[9] *See Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at 184 ("In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 [1998]) (other citations omitted); *Parker*, 2008 WL 4415255, at *3 (noting that federal courts may only consider procedurally barred claims where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, Petitioner must show that some objective, external factor impeded his ability to either fully exhaust his unexhausted claims, or properly preserve for appellate review the claim he asserts in his first ground for relief. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, 01-CV-9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*).  Examples of such external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default.  *See Murray v.*

---

[9]      A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

*Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, 08-CV-3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No. 09-0090-pr (2d Cir. Apr. 17, 2009).

Petitioner has not established legal cause for the procedural defaults detailed *ante*. Significantly, he has never claimed in the state courts that his trial counsel rendered ineffective assistance by failing to preserve for appellate review the issue of whether Petitioner was entitled to a hearing on whether he breached the terms of the Cooperation Agreement, or that his appellate counsel rendered ineffective assistance by omitting from the Leave Application the unexhausted claims discussed *ante*.  (Petition at ¶ 10 [noting that Petitioner did not file any challenges to his conviction other than his direct appeal]).  Nor did Petitioner attempt to establish cause for any of the foregoing defaults in the Traverse he filed herein.  (Traverse.) Additionally, nothing in this Court's review of the file in conjunction with this action suggests–much less establishes–that Petitioner has demonstrated legal cause for the procedural defaults noted above.

Since Petitioner has not demonstrated legal cause for his procedural defaults,[10] this Court need not consider whether he has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless *both* cause and prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, 01-CV-2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y.

_____

[10]      The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  *See Simpson v. Portuondo*, 01-CV-8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

14

Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that Petitioner has failed to establish cause for his procedural defaults does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice.  *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  On this question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). . . . " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 . . . .  "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) . . . (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F. Supp.2d 222, 228 (S.D.N.Y. 2004).

In conjunction with the present action, the state court record, including the transcripts of the proceeding at which Petitioner pleaded guilty to the charges challenged herein, the materials submitted by the parties prior to Petitioner's sentencing, and the transcript of the sentencing hearing, have been reviewed.  That review demonstrates that at his guilty plea before Judge Drago on September 16, 2005, Petitioner plainly admitted his guilt of the criminal sale of controlled substance charges that form the basis of the convictions and sentences challenged

herein.[11]  (Plea Tr. at 12-13 [Petitioner admitting that on January 12, 2005, and again on January 31, 2005, he knowingly and unlawfully sold cocaine in the County of Schenectady]). Furthermore, at his sentencing, Petitioner readily admitted his guilt of the crimes to which he pleaded guilty; he specifically apologized to the victim's family, the court and the "community for having committed the offenses I stand convicted of here today" and noted that he was making his statements because he "recognize[d] the havoc and devastation [that] addiction to crack cocaine" causes to both individuals and communities.  (Sentencing Tr. at 6-7.)  Moreover, it has been properly observed that an individual who pleads guilty to a crime can rarely thereafter establish that he is actually innocent of the charges to which he pleaded guilty.  *Atkinson v. United States*, 05-CV-0286, 2005 WL 3555946, at *6 (N.D.N.Y. Dec. 28, 2005) (McAvoy, J.).

Since Petitioner cannot seek safe harbor from the dismissal of his defaulted claims under this final exception permitting habeas review of his procedurally defaulted claims, the Court denies, as procedurally forfeited, all of the claims he has raised in his habeas petition.

B.    **Substantive Review of Claims**

The Court additionally notes that, even if Petitioner was not procedurally barred from obtaining the relief he seeks herein, he is nevertheless not entitled to habeas intervention for substantive reasons as well.  Prior to considering the substance of those claims, however, the Court briefly reviews the standard to be utilized in alternatively considering the merits of Petitioner's claims.

---

[11]    Nothing before this Court suggests that Petitioner's guilty plea before the County Court did not reflect a voluntary and intelligent choice among the alternative courses of action open to him at the time of his plea, or that such plea was not knowingly, voluntarily, and intelligently made.  *See Parke v. Raley*, 506 U.S. 20, 29 (1992); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985);

16

### 1.   Standard of Review

The enactment of the AEDPA brought about significant new limitations on the power of

a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing

this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009)

as follows:

> a federal court may grant a writ of habeas corpus for a claim that
> has previously been adjudicated on the merits by a state court only
> if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254[d]); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

(citing 28 U.S.C. § 2254[d][1], [2]); *Hawkins v. Costello*, 460 F.3d 238, 242-43 (2d Cir. 2006).

In providing guidance concerning application of this standard, the Second Circuit has observed

as follows:

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of
> a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did.  [*Williams v.
> Taylor*, 529 U.S. 362,] 405-06 [(2000)]; *Loliscio v. Goord*, 263
> F.3d 178, 184 (2d Cir. 2001). . . .  [A] state court's decision is an
> "unreasonable application of" clearly established federal law if the
> state court "identifies the correct governing legal principle from
> [the Supreme] Court's decisions but unreasonably applies that
> principle to the facts" of the case before it.  *Williams*, 529 U.S. at
> 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 [2d Cir. 2000]).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's ruling was merely incorrect or erroneous, but instead whether such decision was "objectively unreasonable."  *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001).  "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted).  As the Court noted in *Schriro*, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  *Schriro*, 550 U.S. at 473.

### 2. Substance of Petitioner's Claims

As discussed more fully above, the Petition before the Court does not attack the propriety of Petitioner's *conviction*, but rather the *sentence* imposed on him following a conviction.  (Petition, Grounds One through Four.)  Therefore, in alternatively considering the substance of Petitioner's claims, this Court looks to the clearly established Supreme Court precedent that exists relating to sentencing proceedings.

### a. Clearly Established Supreme Court Precedent

It is well settled that a sentencing court's discretion is circumscribed by the requirements of due process.  *Gardner v. Florida*, 430 U.S. 349, 358 (1977) ("[T]he sentencing process . . .

18

must satisfy the requirements of the Due Process Clause.").  Thus, an individual may not be incarcerated on the basis of "misinformation" or statements that are "materially untrue." *Townsend v. Burke*, 334 U.S. 736, 741, 68 (1948).  A petitioner therefore has "a due process right to question the procedure leading to the imposition of his sentence." *United States v. Pugliese*, 805 F.2d 1117, 1122 (2d Cir. 1986) (citing *Gardner*, 430 U.S. at 358).[12]

> **b.      Contrary To, or Represents an Unreasonable Application of, Clearly Established Supreme Court Precedent**

> **i.      Failure to Conduct Hearing**

Petitioner initially claims that he is entitled to habeas relief because the Trial Court failed to conduct a hearing prior to determining that Petitioner had violated the terms of a Cooperation Agreement, which in turn subjected Petitioner to the longer term of imprisonment discussed above.  (Petition, Ground One.)

There is no evidence before this Court which suggests–that much less establishes–that any of Petitioner's due process or other constitutional rights were violated in the criminal matter below, either prior to his sentencing or at that proceeding.  To the contrary, the record demonstrates that, after accepting Petitioner's valid guilty plea, and prior to imposing its sentence on Petitioner, the County Court reviewed the following: (1) the pre-sentence investigation report prepared for that court in conjunction with Petitioner's sentencing; (2) pre-sentence memoranda provided to the court by the parties; and (3) letters written to the court by members of Petitioner's family.  (Sentencing Tr. at 3.)  In addition, just prior to Petitioner's

---

[12]      Petitioner has not cited, and this Court's research has not disclosed, any clearly established Supreme Court precedent which specifically addresses the issues of the procedures that must be followed by a state court confronted with a claim that a defendant violated the terms of a cooperation agreement, or that addresses the issue of when a party is entitled to specific performance of such an agreement.

sentencing, the District Attorney referred to his detailed description of the various ways by which Petitioner failed to comply with the terms of the Cooperation Agreement.  Examples of Petitioner's noncompliance with the Cooperation Agreement included the fact that he (1) falsely described facts relating to the death of Crystal Glasper, including the level of his participation in the crime, (2) falsely denied his possession of the possible murder weapon, (3) hindered the prosecution from reconciling or explaining differences between the varying accounts provided to the police relating to the murder of Glasper, (4) made false statements to law enforcement agents who were conducting their investigation into the victim's death, and (5) committed new crimes between the time he executed the Cooperation Agreement and the sentencing hearing.[13]  (Dkt. No. 17, Attach. 13 at 10.)  Judge Drago adopted those findings of the District Attorney. (Sentencing Tr. at 30.)

As discussed more fully above, the Cooperation Agreement specifically provided that, if Petitioner "commits a new crime or violates any other term of this agreement he will forfeit the sentence promise contained here and he will not be permitted to withdraw his pleas of guilty to counts one and three of Indictment 105-28."  (Cooperation Agreement at 4.)  Significantly, Petitioner never claimed in the state courts–and does not assert herein–that the statements contained in the pre-sentence submissions which detailed the manner in which he violated the terms of the Cooperation Agreement were false or misleading.  Nor has he articulated how the County Court's determination that he violated the terms of the Cooperation Agreement was erroneous in any way.

---

[13]     The Appellate Division noted that Petitioner "did not contest County Court's finding in this respect or dispute the sworn evidence proffered by the People in support of their allegation that he breached the terms of the agreement."  *Delayo*, 52 A.D.3d at 1115.

Petitioner has simply failed to establish that the Appellate Division's finding that the County Court was not required to hold a hearing prior to sentencing Petitioner is either contrary to, or represents an unreasonable application of, clearly established Supreme Court precedent. This Court therefore (alternatively) denies Petitioner's first ground for relief on the merits. *See Reyes v. Phillips*, 02-CV-7319, 2005 WL 2757541, at *7-8 (S.D.N.Y. Oct. 24, 2005) (denying habeas claim based upon failure of trial court to hold a hearing on whether petitioner violated the terms of a cooperation agreement).

### ii.      Failure to Prove Breach of Cooperation Agreement

In his second ground for relief, Petitioner asserts that the prosecution was required to establish that he breached the Cooperation Agreement by "a fair preponderance" of evidence. (Petition, Ground Two.)  In a related claim, Petitioner argues that the prosecution failed to meet this burden of proof, and that the County Court erred by concluding that he violated the terms of such agreement.  (*Id.* at Ground Three.)

Assuming, without deciding, that Petitioner correctly asserts that the Government has the burden of demonstrating, by a preponderance of the evidence, that Petitioner violated the terms of the cooperation agreement, *see United States v. Gerant*, 775 F. Supp. 182, 186 (D. Md. 1991) (noting that "the government . . . has the burden of demonstrating by a preponderance of the evidence that a defendant has breached a material provision of a cooperation agreement"), *aff'd in mem. United States v. Gerant*, 995 F.2d 505 (4th Cir. 1993), the record establishes that the prosecution comfortably met its burden in the related criminal matter.  As noted *ante*, evidence in that matter conclusively established that Petitioner had violated the terms of the Cooperation Agreement in several, material ways.[14]  Numerous facts contained in the Husband

---

[14]      The Appellate Division properly categorized the evidence presented by the prosecution to the County Court on the issue of Petitioner's breach of the Cooperation Agreement as "exhaustive."  *See Delayo*, 52 A.D.3d at 1116.

and Wife Affidavits were irreconcilable with statements Petitioner had provided to law enforcement agents concerning what occurred around the time of Glasper's homicide and the disposal of her body.  (Muller Aff. at 10-13.)  The only explanation provided by Petitioner for those substantial discrepancies was that the Husband and Wife were lying.  (*Id.* at 17.)

This Court finds that the affidavits of the Husband and Wife, together with the affidavit provided to the Trial Court by the prosecutor prior to Petitioner's sentencing, plainly established, by a preponderance of the evidence, that Petitioner had violated the terms of the Cooperation Agreement.  Petitioner has not established that the Third Department's decision rejecting his appellate claims challenging the Trial Court's determination that he violated the terms of such agreement, *see Delayo*, 52 A.D.3d at 1115, is either contrary to, or represents an unreasonable application of, clearly established Supreme Court precedent.  This Court accordingly denies Petitioner's second and third grounds for relief for this reason as well.

### iii.    Specific Performance of Cooperation Agreement

In his final ground for relief, Petitioner argues that he is entitled to specific performance of the Cooperation Agreement.  (Petition, Ground Four.)

Initially, this Court notes that the Second Circuit has observed that the sentencing court "does not bargain for a defendant's plea," and that statements made by courts to a criminal defendant in conjunction with a plea "do not constitute a contract."  *United States v. Renaud*, 999 F.2d 622, 625 (2d Cir. 1993).  Thus, a request that this Court direct "specific performance" of the Cooperation Agreement, and thereby compel the County Court to sentence Petitioner to the indeterminate term of two to six years imprisonment referenced in that agreement, *see* Cooperation Agreement at 3, "is inapt."  *Renaud*, 999 F.2d at 625.

Furthermore, this claim is necessarily based upon Petitioner's mistaken belief that he fully complied with his obligations under that agreement, and is therefore entitled to the

indeterminate term of two to six years described therein.  As noted above, however, Petitioner

violated the terms of the Cooperation Agreement in a variety of ways.  The Cooperation

Agreement that Petitioner now seeks to specifically enforce provided as follows:

> If defendant fails to abide by the terms of this agreement, he will
> be sentenced to an indeterminate sentence of 8 1/3 to 25 years in
> State Prison on his plea to count one of Indictment 105-28 and a
> determinate sentence of 9 years on count three of Indictment
> 105-28. . . .  The sentence of 8 1/3 to 25 will run consecutive to the
> sentence of 9 years.  (Cooperation Agreement at 3-4.)

Since Petitioner received a sentence *less* than that to which he was subject under the

terms of the Cooperation Agreement in light of his failure to comply with the terms of that

agreement, it is clear that he would not benefit, in any way, if this Court were to specifically

enforce the terms of the Cooperation Agreement.  Petitioner has failed to demonstrate that the

Appellate Division's decision denying this aspect of his appeal, *see Delayo*, 52 A.D.3d at 1116,

is either contrary to or represents an unreasonable application of, relevant clearly established

Supreme Court precedent.   The Court therefore denies Petitioner's fourth and final ground for

relief on this basis as well.

## III.    CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals
> from . . . the final order in a habeas corpus proceeding in which the
> detention complained of arises out of process issued by a State
> court . . . .[15]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant

has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

---

[15]     Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal
may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of
appealability under 28 U.S.C. § 2253(c)."  *See* Fed. R. App. P. 22(b).

2253(c)(2).  Since Petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Petitioner's Petition (Dkt. No. 1) is **<u>DENIED</u>** and **<u>DISMISSED</u>**; and it is further

**ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c); and it is further

**ORDERED** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Decision and Order filed by any party).

Dated: December 1, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge